### MERCHANTS' NAT. BANK OF WHITEHALL v. CHAPIN et al.

*(Supreme Court, General Term, Third Department. July 11, 1891.)*

FRAUDULENT CONVEYANCES—EVIDENCE.

> Defendant and her son S. were engaged in the dry goods business together. The business began to fail, whereupon the mother sold out to S., who assumed the liabilities of the concern, and conveyed her real estate to G., another son, for the expressed consideration of one dollar. S. shortly thereafter failed, and judgment was recovered by plaintiff against him and defendant on liabilities of the old firm. S. conveyed his real estate to his infant sister, for the consideration of one dollar. Defendant also conveyed to G. her dower interest in real estate of the value of $20,000 for the consideration of $1,000. *Held,* that the evidence was sufficient to justify a finding that defendant's deeds to G. were executed with intent to hinder and delay plaintiffs in the collection of their debt.

Appeal from judgment on report of referee.

Action by the Merchants' National Bank against S. Edward Chapin, Harriet Chapin, and others, to set aside alleged fraudulent conveyances. From a judgment for plaintiff, defendants appeal.

Argued before LEARNED, P. J., and LANDON and MAYHAM, JJ.

*O. A. Dennis,* for appellants, *Potter & Lillie,* (*J. S. Potter,* of counsel,) for respondent.

LANDON, J. The referee found that the conveyances by Harriet Chapin of March 2, 1889, and May 2, 1889, were each made with intent to hinder and delay her creditors. The conveyances of March 2, 1889, were to her son George, for the expressed consideration of one dollar, and were of the homestead in Whitehall, worth $4,500, and of the Manville house, in the same village, worth $3,000. At that date she had a dower interest in the Chapin block in Whitehall, the block being valued at $20,000 over incumbrances. She had real estate in Burlington, Vt., worth $6,000. At that date she and her son S. Edward Chapin were partners as dry goods mer-

chants, and had been since April 1, 1887. They had succeeded to the business of Richard Chapin, the husband of Harriet, and father of S. Edward, and assumed his business liabilities, amounting to about $3,000; the assets not being shown. The business of S. E. Chapin & Co., the new firm, had not been prosperous. December 1, 1887, the bills payable were $3,600. March 1, 1889, the bills payable were $13,493, and the nominal assets, as entered upon their books, were $17,634.14, of which $3,741.06 were outstanding accounts, a large part of which were desperate. April 13, 1889, there being no material change in the situation of the firm affairs, Harriet, by a bill of sale, transferred all her interest in the firm business to S. Edward, for the expressed consideration of $7,000, S. Edward agreeing to pay the firm liabilities. S. Edward, as one of the heirs of Richard Chapin, who had died intestate in September, 1887, owned an undivided one-third of the Chapin block, subject to his mother's right of dower therein. At the date of the bill of sale he conveyed to his mother his interest in the Chapin block for $7,000, and thus paid the consideration expressed in the bill of sale from his mother. On April 1, 1889, Harriet Chapin sold her real estate in Burlington for $4,500, and in April and May after her withdrawal from the firm of S. E. Chapin & Co. she loaned $3,800 of the proceeds to S. Edward, and took his notes therefor. May 2, 1889, Harriet conveyed to her son George H. all her interest in the Chapin block, including that conveyed to her by S. Edward. The consideration expressed in the deed was $1,000, which George H. paid. S. Edward struggled along with the dry goods business in his own name until June 8, 1889, when he made an assignment for the benefit of his creditors. The assignee disposed of his stock of goods, and realized from the entire assigned property $6,946. The stock was sold at some sacrifice of wholesale prices, but the referee finds that the assignee disposed of it properly. Between the date of S. Edward's purchase of his mother's interest in the firm property and the date of his assignment he decreased the debts of the firm and increased his own, so that on June 8, 1889, he owed as a member of the firm of S. E. Chapin & Co., with interest to December 1, 1889, $8,376.12, and debts which he contracted upon his individual account, $9,514.20. The assignee, pursuant to the direction of the court, distributed the net proceeds of the assigned property *pro rata* among both classes of creditors. George H. Chapin had been employed as a clerk in the business of S. E. Chapin & Co. September 24, 1889, he conveyed the homestead and Manville real estate to his sister, the infant defendant, Mary Chapin, for the consideration of one dollar. S. Edward, George H., and Mary Chapin are the only children of Richard and Harriet E. Chapin, and only heirs of Richard. The plaintiff had loaned money to the amount of $8,000 to the firm of S. E. Chapin & Co., and held the notes of the firm for the amount at the date of the assignment. They obtained judgment against S. Edward and Harriet E. upon the same, received some dividend from the assignee, and issued execution, which was returned unsatisfied. Other creditors have recovered judgments and received their dividends. It appears from the foregoing recital that the referee was authorized to draw the inference that Harriet and George H. Chapin, foreseeing the calamity that must befall the firm, concluded that it would be prudent for Harriet to transfer the homestead and Manville house to George H. This was done March 2, 1889, for the consideration of one dollar. It may be that Harriet did not fully appreciate the situation at that time, but George obviously did. The next step was Harriet's sale of the Burlington property, worth $6,000, sold April 1, 1889, for $4,500,—an apparent sacrifice of $1,500, the motive of which the referee was to infer from all the circumstances. Next is Harriet's withdrawal from the firm for a consideration agreed upon of $7,000, payable in S. Edward's interest in the Chapin block, which enables her to take S. Edward's interest in the Chapin block at the same agreed price, and transfer the same, with her

own dower interest in it, to George, for the consideration of $1,000. All her real estate has now passed into George's hands, including also that of S. Edward. Of course, all this may have been done by Harriet without actual knowledge of the desperate condition of the firm, or of S. Edward as its successor. But it was for the referee to draw the proper inferences, and he could not avoid perceiving that, if it had been the purpose of the parties to withdraw all the real estate held by S. Edward and Harriet from the reach of creditors, the course actually taken was probably as ingenious and as likely to be effective as any that could be devised. If devised and executed for that purpose, that is the end of the matter. We see no valid ground upon which to reverse the finding. The conveyance to Mary was purely voluntary, and must fall with the others. The defendants object that the action ought to have been brought by the assignee for the benefit of all the creditors, and not by the plaintiff for its own benefit, but there is no general assignee of Harriet, and it is her conveyances that the judgment sets aside. S. Edward cannot object to the validity of his conveyance to Harriet. Besides, the plaintiff brings the action for the benefit of the other judgment creditors, as well as for its own. The defendants insist that the referee erred in the statement of the amount due upon the plaintiff's judgments, and that it is too large by $1,224.67. The plaintiff admits some error. The statement will be corrected in the order to be settled as claimed by defendants upon notice of three days, unless the plaintiff then shows cause to the contrary, the order to be settled by LANDON, J., and error, if any, in the statement to be corrected; and, as thus settled, judgment affirmed, with costs.

All concur.